# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASON MCMANUS HOLTZMAN,** *et al.* | : | |
| Plaintiffs, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 22-122** |
| | : | |
| **PHILADELPHIA MUSEUM OF ART,** | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this 2nd day of February, 2023, upon consideration of Defendant Philadelphia

Museum of Art's Motion to Dismiss for Failure to State a Claim (ECF No. 43), it is hereby

**ORDERED** that Defendant's Motion (ECF No. 43) is **DENIED.** [1]

**IT IS SO ORDERED**.

BY THE COURT:

*/s/ John Milton Younge*
**JUDGE JOHN MILTON YOUNGE**

---

[1] **FACTUAL/PROCEDURAL BACKGROUND:**
Plaintiffs Jason McManus Holtzman, Jackie McManus Holtzman, and Madalena McManus Holtzman, as Trustees of the Elizabeth McManus Holtzman Irrevocable Trust ("Plaintiffs"), instituted an action in state court to recover a 1926 painting by Dutch artist Piet Mondrian from Defendant Philadelphia Museum of Art ("Defendant") known as Schilderij No. 1, 60 x 60 cm ("the Painting"). Plaintiffs brought their action pursuant to the Holocaust Expropriated Art Recovery Act of 2016, Pub. L. No. 114-308, 130 Stat. 1524 (the "HEAR Act")—including claims for replevin (Count I), conversion (Count II), unjust enrichment (Count III), and a declaratory judgment (Count IV). (Am. Compl. ¶¶ 58-85, ECF No. 39.) On January 11, 2022, pursuant to 28 U.S.C. § 1441(a), Defendant timely removed this case to this Court. (Notice of Removal, ECF No. 1.) On February 28, 2022, Plaintiffs filed a motion to remand this case to state court. (Mot. to Remand, ECF No. 11.) On July 7, 2022, this Court denied Plaintiffs' motion to remand— ultimately finding that this Court had subject matter jurisdiction over this case as it raises a federal question in connection with the HEAR Act. (ECF No. 28.) On August 24, 2022, Defendant filed a motion to dismiss—alleging that the HEAR Act does not apply to Plaintiffs' claims in connection with the Painting, and that, even if it did, several doctrines—such as laches and adverse possession—would prove fatal to Plaintiffs' claims. (Def. Mot. to Dismiss, ECF No. 43.)

**LEGAL STANDARD:**
The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for]

relief that is plausible on its face.'" *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**DISCUSSION:**
In its motion to dismiss, Defendant asserts several different arguments for dismissal—ranging from the inapplicability of the HEAR Act to the facts of this case and the inapplicability of the HEAR Act to Plaintiffs' more specific claims for replevin, conversion, unjust enrichment, and a declaratory judgment to the doctrines of laches and adverse possession. This Court will review these three high-level arguments in turn.

**The Applicability of the HEAR Act:**
As a threshold matter, the HEAR Act applies to any "civil claim or cause of action against a defendant to recover any artwork or other property that was lost during the covered period because of Nazi persecution." HEAR Act, § 5(a). The "covered period" runs from January 1, 1933 until December 31, 1945. HEAR Act, § 4(3). "Nazi persecution" is defined as "any persecution of a specific group of individuals based on Nazi ideology by the Government of Germany, its allies or agents, members of the Nazi Party, or their agents or associates, during the covered period." HEAR Act, § 4(5).

In its motion to dismiss, Defendant argues that the Painting was not "lost" due to Nazi persecution; instead, it was simply "removed" from the Hanover Museum by the German government based on aesthetic and value judgments. (Def. Mem. of Law in Supp. of Def. Mot. to Dismiss, pp. 11-12, ECF No. 43-1.). Further, Defendant contends that the "specific group of individuals" contemplated under the HEAR Act's definition of "Nazi persecution" applies solely to individuals who are "Jewish, Roma, homosexual, or a member of any specific group disfavored by the Nazis"—*i.e.,* it does not include alleged "degenerate artists" like Mondrian. (Def. Mem. of Law in Supp. of Def. Mot. to Dismiss, pp. 11, 13, ECF No. 43-1.). Finally, Defendant argues that the Painting was not lost "because of Nazi persecution"; quite the contrary, "Mondrian relinquished possession when he consigned the Painting for sale in or about 1926." (Def. Mem. of Law in Supp. of Def. Mot. to Dismiss, p. 19, ECF No. 43-1.)

In response, Plaintiffs direct this Court's attention to an art critic's July 24, 1937 article comprised of a "list of artists, which included Mondrian, [that] came to be the guideline for determining 'degenerate artists.'" (Pl. Resp. in Opp. to Def. Mot. to Dismiss, p. 17, ECF No. 44; Am. Compl. ¶ 27, ECF No. 39.) In highlighting the disdain experienced by this group of "degenerate artists," Plaintiffs also note how Joseph Goebbels, Reich Minister of Public Enlightenment and Propaganda, noted in 1937: "How deeply the perverse Jewish spirit has penetrated German cultural life is shown in the frightening and horrifying forms of the 'Exhibition of Degenerate Art' in Munich." (Pl. Resp. in Opp. to Def. Mot. to Dismiss, p. 14, ECF No. 44; Am. Compl. ¶ 26, ECF No. 39.) Thus, the "removal" of Mondrian's artwork from the Hanover Museum was part of a larger pattern of persecution on the part of "degenerate artists"—especially since "[d]egenerate artists were prohibited from producing their art, fired from teaching positions, arrested and detained, their artworks were confiscated, exhibitions of their works were shut down, and books about them or authored by them were burned." (Pl. Resp. in Opp. to Def. Mot. to Dismiss, p. 14, ECF No. 44; Am. Compl. ¶ 28, ECF No. 39.) Lastly, Plaintiffs argue that Mondrian did not lose the Painting because of his consignment—as evidenced by the assertion that "Mondrian died believing that he had lost title to his Painting because of the Nazi seizure." (Pl. Resp. in Opp. to Def. Mot. to Dismiss, p. 22, ECF No. 44; Am. Compl. ¶¶ 38, 40, ECF No. 39.)

Because this Court—at the Motion to Dismiss stage—must accept all of Plaintiffs' allegations in their Complaint as true and view the same in a light most favorable to Plaintiffs, this Court must naturally give appropriate weight to Plaintiffs' assertions. Relatedly, given that "[c]ourts have generally interpreted the HEAR Act liberally, focusing on the purpose for which it was enacted," *Reif v. Nagy*, 175 A.D.3d 107, 132, 106 N.Y.S.3d 5, 23 (2019), this Court declines to try to resolve these competing theories, definitions, and interpretations before a factual record can be more thoroughly developed through the discovery process. As the Third Circuit instructs, "[a] Rule 12(b)(6) motion should be granted when it appears to a certainty that no relief can be granted under any set of facts which could be proved." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 350 (3d Cir. 2012). However, both sides to this dispute have proffered competing interpretations of the applicability of the HEAR Act, based largely upon disputed facts. This Court must acknowledge the assertions of both sides and allow the case to proceed forward. At this stage, the rules only require that the complaint provide "the defendant fair notice of what the claim is and the grounds upon which it rests." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007)). Upon review of Defendant's meticulous counterarguments, it is evident that Defendant has a clear understanding of the claims being brought by Plaintiffs and the grounds upon which those claims rest. Taken together, the instruction to accept Plaintiffs' allegations as true at the motion to dismiss stage, the liberal interpretation of the HEAR Act, this Court's finding that there are potential facts that could implicate the HEAR Act, and this Court's reiteration of the federal pleading and notice standard all weigh in favor of allowing Plaintiffs' claims to proceed to the discovery phase.

## Replevin, Unjust Enrichment, Conversion, and Declaratory Judgment

In its motion to dismiss, Defendant also argues that Plaintiffs' claims for replevin, unjust enrichment, conversion, and a declaratory judgment should be dismissed. (Def. Mem. of Law in Supp. of Def. Mot. to Dismiss, p. 20, ECF No. 43-1.) Under Defendant's interpretation, "a civil claim or cause of action against a defendant to recover any artwork or other property that was lost during the covered period because of Nazi persecution" means that the *only* remedy is the return of the artwork—*i.e.*, the HEAR Act does not include claims seeking damages and other forms of relief. (*Id.*) However, given that this Court has determined that the HEAR Act can still potentially be invoked (at least at the pleading stage), this would necessarily mean that Plaintiffs' replevin claim is still viable—as it seeks the immediate return of the Painting. (Am. Compl. ¶¶ 58-64, ECF No. 39.) With respect to Plaintiffs' claims for unjust enrichment, conversion, and a declaratory judgment, this Court is inclined to follow other courts that have seemingly permitted these claims in connection with the HEAR Act. *See, e.g., Reif v. Nagy*, 61 Misc. 3d 319, 328, 80 N.Y.S.3d 629, 635 (N.Y. Sup. Ct. 2018), *aff'd as modified,* 175 A.D.3d 107, 106 N.Y.S.3d 5 (2019) (finding that for claims of replevin, conversion, and declaratory judgment, "[a]lthough defendants argue that the HEAR Act is inapplicable, this argument is absurd, as the act is intended to apply to cases precisely like this one, where Nazi-looted art is at issue."); *see also de Csepel v. Republic of Hungary*, No. 1:10-CV-01261(ESH), 2020 WL 2343405, at *34 (D.D.C. May 11, 2020), *aff'd,* 27 F.4th 736 (D.C. Cir. 2022) ("Plaintiffs' conversion claims [which requested either the return of the artworks or monetary damages] qualify as preexisting claims that will be revived by the HEAR Act…."). In sum, Plaintiffs' claims for replevin, unjust enrichment, conversion, and a declaratory judgment will proceed to the discovery phase.

## Doctrines of Laches and Adverse Possession

Finally, Defendant's attempt to invoke the doctrines of laches and adverse possession are premature at this stage of the litigation—*i.e.*, the motion to dismiss stage. (Def. Mem. of Law in Supp. of Def. Mot. to Dismiss, pp. 25-32, ECF No. 43-1.) After all, "'[p]roof of the elements of laches must be clear from the face of the record' and because '[t]he defense of laches is a factual one,' it 'generally requires a hearing.'" *Fenton v. Balick*, 821 F. Supp. 2d 755, 762 (E.D. Pa. 2011) (quoting *Sedor v. W. Mifflin Area Sch. Dist.*, 713 A.2d 1222, 1225 (Pa. Commw. Ct. 1998)). Similarly, the Pennsylvania Superior Court instructs that "[a]dverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law. Accordingly, the grant of this extraordinary privilege should be based upon

clear evidence." *Recreation Land Corp. v. Hartzfeld*, 2008 PA Super 76, ¶ 7, 947 A.2d 771, 774 (2008). These pronouncements—around the defense of laches likely requiring a hearing or some more robust consideration and around adverse possession being an extraordinary remedy that should be based upon clear evidence—only add more credence to the notion that a factual record needs to be developed to further ascertain whether either doctrine can be invoked.

**CONCLUSION:**

For the foregoing reasons, Defendant Philadelphia Museum of Art's motion to dismiss is hereby denied. The motion to dismiss stage is not the appropriate stage to handle the arguments proffered by Defendant to dismiss Plaintiffs' claims—especially in the absence of factual discovery (including potential expert testimony and discovery) that could add additional color and context to the various claims asserted throughout the Complaint. For the avoidance of doubt or confusion, this Court's denial of Defendant's motion to dismiss in no way affects Defendant's ability to re-raise its various arguments and defenses at the summary judgment stage.

4